# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

REHABCARE GROUP, EAST, INC.,     )
     )
          Plaintiff,     )
     )     Case No. 11 C 6557
          v.     )
     )
CAMELOT TERRACE, INC., *et al.*     )
     )
          Defendants.     )

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

On February 17, 2012, Plaintiff RehabCare Group East, Inc. d/b/a RehabCare Group Therapy Services, Inc. ("RehabCare") filed a six-count First Amended Complaint against Defendants Camelot Terrace, Inc. d/b/a Camelot Terrace ("Camelot Terrace"), as well as individual skilled nursing facilities and the owner of these facilities, alleging state law claims of breach of contract (Count I), promissory estoppel (Count II), unjust enrichment (Count III), account stated (Count IV), tortious interference with contracts (Count V), and fraudulent conveyance (Count VI) based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), (6). For the following reasons, the Court denies Defendants' motion.

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. *See Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443-44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322

F.3d 942, 946 (7th Cir. 2003) (en banc).  If a defendant is challenging the sufficiency of the allegations regarding subject matter jurisdiction, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *See Apex Digital*, 572 F.3d at 443-44; *United Phosphorus,* 322 F.3d at 926.  If, however, the defendant denies or controverts the truth of the jurisdictional allegations, the Court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists.  *See Apex Digital,* 572 F.3d at 444; *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007).  "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raises the jurisdictional challenge." *Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008).

## II.       Rule 12(b)(6)

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted."  *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570).

"In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

### III. Rule 9(b)

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 446 (7th Cir. 2011). Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud. *See AnchorBank, FSB v. Hofer,* 649 F.3d 610, 615 (7th Cir. 2011). This "ordinarily requires describing the 'who, what, when, where, and how" of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *Id.* (citation omitted). "Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp.,* 631 F.3d at 441 (citation omitted).

### BACKGROUND

Plaintiff RehabCare alleges that this lawsuit arises out of Defendants' failure to pay RehabCare for therapy services it provided to the residents of skilled nursing facilities, namely, Camelot Terrace, Regal Health and Rehab Center, Forest Hill Health and Rehabilitation Center, and Galesburg Terrace (collectively "Facility Defendants"). (R. 25, First Am. Compl. ¶ 1.) RehabCare is a Delaware corporation with its principal place of business in St. Louis, Missouri. (*Id.* ¶ 2.) RehabCare provides therapy services to residents of long-term care and skilled nursing

facilities. (*Id.*) Camelot Terrace is an Illinois corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶ 3.) Regal Health and Rehab Center, Inc. ("Regal"), Forest Hill Health & Rehab Center, Inc. ("Forest Hill"), Galesburg Terrace, Inc. ("Galesburg"), and Gem Healthcare Management, Inc. ("Gem") are Illinois corporations with their principal place of business in Chicago, Illinois. (*Id.* ¶¶ 4-7.) Michael Lerner is the principal owner of Gem, Forest Hill, and Galesburg. (*Id.* ¶¶ 12, 13.) Lerner is a citizen of Illinois and maintains his domicile within the State of Illinois. (*Id.* ¶ 8.) RehabCare alleges that until mid-2010, Lerner was the principal owner of Camelot Terrace and Regal and that he may still be the owner of these entities, although certain assets of Camelot Terrace and Regal were sold to non-parties in 2010. (*Id.* ¶ 14.)

RehabCare further alleges that it entered into separate agreements with Camelot Terrace, Regal, Forest Hill, and Galesburg to provide therapy services at these facilities as modified from time to time (hereinafter "Therapy Service Agreements"). (*Id.* ¶ 15.) RehabCare also asserts that Camelot Terrace purported to terminate its Therapy Services Agreement with RehabCare effective March 31, 2010, but failed to give proper notice and did not have valid cause to terminate the agreement. (*Id.* ¶ 16.) Thereafter, RehabCare exercised its rights to terminate the Therapy Services Agreements with Regal, Forest Hill, and Galesburg effective May 7, 2010. (*Id.* ¶ 17.) RehabCare contends that it performed all obligations under the Therapy Services Agreements, submitted monthly invoices, and otherwise satisfied all conditions precedent to payment. (*Id.*) As such, RehabCare maintains that pursuant to the Therapy Services Agreements with the Facility Defendants and RehabCare's performance thereunder, the Facility Defendants must pay for the services RehabCare provided. (*Id.* ¶ 18.) Moreover, RehabCare contends that

despite repeated demands for the sums due and owing under the Therapy Services Agreements, the Facility Defendants have refused to pay for these services and that the outstanding balance owed is accruing interest under the terms of the Therapy Services Agreements. (*Id*. ¶ 19.)

Furthermore, RehabCare asserts that it has conferred with Defendants on numerous occasions regarding the outstanding invoices and the amounts past due making repeated demands for payment. (*Id*. ¶ 20.) During these conferences, Defendants represented to RehabCare that they would pay the outstanding invoices and that Defendants requested that RehabCare continue to provide services in accordance with the Therapy Services Agreements. (*Id*. ¶ 21.) Despite RehabCare's billing, repeated demands for the sums due, and conferences regarding the amounts outstanding, RehabCare alleges that Defendants failed to pay for RehabCare's services. (*Id*. ¶ 23.) In addition, RehabCare alleges that upon information and belief, Medicare has reimbursed Defendants for all or a significant portion of these services and that Defendants have directly or indirectly benefitted from this reimbursement. (*Id*. ¶ 25.)

RehabCare also alleges that during the relevant time-period, Gem managed the Facility Defendants. (*Id*. ¶ 26.) Upon information and belief, Gem knew of the Therapy Services Agreements between the Facility Defendants and RehabCare, and, without justification, used its management control to cause the Facility Defendants to breach the Therapy Services Agreements and divert funds owed RehabCare solely for Gem's gain or to harm RehabCare. (*Id*.) RehabCare further alleges that Gem and Lerner so controlled and manipulated the Facility Defendants that the Facility Defendants are mere instrumentalities of Gem and Lerner. (*Id*. ¶ 27.) RehabCare alleges that Gem's and Lerner's control is evidence by: (1) directing payment of insider debts, including Gem and Lerner and other entities Lerner controlled, before third-party

creditors; (2) commingling funds; (3) sharing other assets without a corresponding exchange of value; (4) intentionally undercapitalizing the business in which they were engaged; (5) leveraging unprofitable facilities to ensure that the more profitable facilities remain profitable and available to provide funds to Gem, Lerner, and other insiders; and (6) using the Facility Defendants as business conduits for Gem as the dominant entity and Lerner, along with other insiders. (*Id*.) RehabCare also contends that Defendants operate without respect for corporate formalities and in a manner that is inconsistent with their being separate and distinct legal entities to the detriment of third-party creditors such as RehabCare. (*Id*. ¶ 28.)

Furthermore, RehabCare alleges joint and several liability as to each Defendant for the obligations of all Defendants. (*Id*. ¶ 29.) RehabCare alleges that it provided services for which it has not been paid to Camelot Terrace in the amount of $90,243.06 from August 2009 to March 2010, to Forest Hill in the amount of $47,415.35 from June 2009 to May 2010, to Galesburg Terrace in the amount of $149,378.98 from March 2009 to May 2010, and to Regal in the amount of $169,849.73 from December 2008 to May 2010. (*Id.* ¶ 30.) RehabCare thus alleges that the total amount the Facility Defendants owe RehabCare is $456,887.12. (*Id*.)

## ANALYSIS

### I.    Subject Matter Jurisdiction

Defendants first argue that the Court lacks subject matter jurisdiction over RehabCare's dispute with Forest Hill because RehabCare alleges that it provided services to Forest Hill in the amount of $47,415.35, which is under the required $75,000 jurisdictional amount. *See Blomberg v. Service Corp. Int'l,* 639 F.3d 761, 763 (7th Cir. 2011) ("If the party opposing federal jurisdiction contests the amount in controversy, the proponent must 'prove those jurisdictional

facts by a preponderance of the evidence.'") (citation omitted).  Here, RehabCare argues that

because it has properly alleged that Defendants are jointly liable under its alter ego theory, the

amounts in controversy can be aggregated to meet the jurisdictional amount.  *See LM Ins. Corp.*

*v. Spaulding Enter. Inc.,* 533 F.3d 542, 548 (7th Cir. 2008); *see also Middle Tennessee News*

*Co., Inc. v. Charnel of Cincinnati, Inc.,* 250 F.3d 1077, 1081 (7th Cir. 2001).  The Court agrees.

Under Illinois law, a party seeking to disregard a corporate entity based on an alter ego

theory must establish that:  (1) there is such unity of interest and ownership that the separate

personalities of the corporation and the individual no longer exist; and (2) adherence to the

fiction of a separate corporate existence would promote injustice or inequity.  *See Laborers'*

*Pension Fund v. Lay-Com, Inc.,* 580 F.3d 602, 610 (7th Cir. 2009); *Judson Atkinson Candies,*

*Inc. v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 378 (7th Cir. 2008).  In its First Amended

Complaint, RehabCare alleges that Gem managed the Facility Defendants and knew of the

Therapy Services Agreements between the Facility Defendants and RehabCare, yet without

justification, used its management control to cause the Facility Defendants to breach the Therapy

Services Agreements and divert funds owed RehabCare solely for Gem's gain.  RehabCare also

alleges that Gem and Lerner so controlled and manipulated the Facility Defendants that they are

mere instrumentalities of Gem and Lerner.  RehabCare alleges particular circumstances in which

Gem and Lerner controlled the Facility Defendants, including: (1) directing payment of insider

debts before third-party creditors; (2) commingling funds; (3) sharing assets without a

corresponding exchange of value; (4) intentionally undercapitalizing the business in which they

were engaged; (5) leveraging unprofitable locations to ensure that the more profitable locations

remain profitable and available to provide funds to Gem and Lerner; and (6) using the Facility

Defendants as business conduits for Gem as the dominant entity. Also, RehabCare alleges that Defendants operate without respect for corporate formalities and in a manner that is inconsistent with their being separate and distinct legal entities to the detriment of third-party creditors such as RehabCare.

RehabCare's factual allegations suggest that it has a right to relief above a speculative level and actual proof of these alleged facts is plausible. *See Independent Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012). Also, Defendants are on notice of RehabCare's alter ego theory and the grounds upon which it rests. *See Erickson,* 551 U.S. at 93 (citation omitted). Because RehabCare has properly alleged joint liability through its alter ego theory, RehabCare has satisfied the amount in controversy by aggregating the amounts against each Facility Defendant. *See LM Ins. Corp.,* 533 F.3d at 548. The Court therefore denies Defendants' Rule 12(b)(1) motion to dismiss.

## II.    Promissory Estoppel and Unjust Enrichment Claims – Counts II and III

Next, Defendants argue that RehabCare's promissory estoppel and unjust enrichment claims must fail because RehabCare also alleges that express contracts exist, namely, the Therapy Services Agreements. In other words, Defendants maintain that the equitable remedies of unjust enrichment and promissory estoppel are not available because there is an adequate remedy of law based on RehabCare's breach of contract claim. *See Guinn v. Hoskins Chevrolet,* 361 Ill.App.3d 575, 604, 296 Ill.Dec. 930, 836 N.E.2d 681 (1st Dist. 2005). Defendants' argument is unavailing because under the federal notice pleading standards, which federal courts apply in all federal civil litigation, a party may plead in the alternative although the pleadings may be inconsistent. *See Pirelli Armstrong Tire Corp.,* 631 F.3d at 448; *Hefferman v. Bass,* 467

F.3d 596, 599 (7th Cir. 2006); *Alper v. Altheimer & Gray,* 257 F.3d 680, 687 (7th Cir. 2001);

Fed.R.Civ.P 8(d)(2).  The Court therefore denies Defendants' motion to dismiss Counts II and III

on this basis.

### III.      Breach of Contract and Account Stated Claims – Counts I and IV

Defendants take issue with the fact that RehabCare did not attach the express, written

contracts to the First Amended Complaint.  Although the Illinois rules of civil procedure require

plaintiffs to attach relevant written instruments to pleadings, *see* 735 ILCS 5/1-606, the Federal

Rules of Civil Procedure have no such requirement.  *See Arnold v. Janssen Pharm., Inc.,* 215

F.Supp.2d 951, 962 (N.D. Ill. 2002) ("federal courts, unlike Illinois state courts, do not require

that critical documents be attached to the complaint.").

Meanwhile, Defendants' other argument regarding Count I is based on a factual dispute

that is best left for summary judgment.  *See Clark v. City of Braidwood*, 318 F.3d 764, 767-68

(7th Cir. 2003).  Defendants specifically argue that the Therapy Services Agreements provide

that each separate nursing home is required to pay any amounts due for each respective contract.

RehabCare has not alleged these facts and, as the Seventh Circuit explained over 25 years ago,

"the defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to

present a different set of allegations.  The attack is on the sufficiency of the complaint, and the

defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's

claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd.*

*of Educ.,* 811 F.2d 1030, 1039 (7th Cir. 1987).  This holds true after the Supreme Court's

decisions in *Twombly* and *Iqbal*.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167

L.Ed.2d 1081 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as

true all of the factual allegations contained in the complaint."); *Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir. 2011) ("In reviewing a plaintiff's claim, the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor.").

Last, RehabCare's account stated claim as alleged in Count IV is an alternative means to recovering the same amount as under its breach of contract claim, therefore, RehabCare alleged this claim in the alternative under Rule 8(d). *See Pedersen & Houpt, P.C. v. Summit Real Estate Group, LLC,* 376 Ill.App.3d 681, 688, 315 Ill.Dec. 517, 523, 877 N.E.2d 4 (1st Dist. 2007). Accordingly, the Court denies Defendants' motion to dismiss Counts I and IV.

## IV.     Tortious Interference with Contract Claim – Count V

Defendants also challenge RehabCare's allegations against Gem relating to its tortious interference with contract claim.  To establish tortious interference under Illinois law, RehabCare must show "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *Hess v. Kanoski & Assoc.,* 668 F.3d 446, 454 (7th Cir. 2012) (citation omitted).

In its First Amended Complaint, RehabCare alleges that Gem was aware of the Therapy Services Agreements at issue and used its management control of the Facility Defendants to intentionally, maliciously, and without justification cause the Facility Defendants to breach the Therapy Services Agreements with RehabCare for Gem's benefit.  (First Am. Compl. ¶ 57.) RehabCare explains that Gem diverted funds due RehabCare solely for its own gain during the

time period in which the Facility Defendants were breaching the Therapy Services Agreements by failing to pay amounts due and owing to RehabCare.  (*Id*.)

In their motion to dismiss, Defendants do not argue that RehabCare has failed to sufficiently allege its tortious interference claim under the federal notice pleading standards. Instead, Defendants argue that because Gem was the managing agent of the Facility Defendants, it cannot be liable for tortious interference for the facilities that it managed.  In other words, it appears that Defendants are arguing that Gem's actions were privileged because Gem was acting on behalf of the Facility Defendants in a fiduciary or legal capacity.  *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 157, 137 Ill.Dec. 19, 545 N.E.2d 672 (Ill. 1989); *MGD, Inc. v. Dalen Trading Co.,* 230 Ill.App.3d 916, 920, 172 Ill.Dec. 736, 596 N.E.2d 15 (1st Dist. 1992).  When courts recognize a privilege in the context of intentional interference with contract claims, a plaintiff may plead that a defendant's conduct was unjustified to overcome the privilege.  *See HPI Health,* 131 Ill.2d at 158; *MGD*, 230 Ill.App.3d at 920 ("plaintiff must show that the desire to harm was unrelated to the interests of the corporation"). To clarify, a "defendant who is protected by a privilege [] is not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." *HPI Health,* 131 Ill.2d at 158; *see also Williams v. Shell Oil Co.,* 18 F.3d 396, 402 (7th Cir. 1994).  As the Supreme Court of Illinois explained in the context of the facts in *HPI Health*, "a hospital management company, whose privilege is based upon the management company's role in exercising business judgment on behalf of the company's hospital, would not be justified in inducing a breach of contract solely for the management company's gain, or solely for the purpose of harming the plaintiff, since such conduct would not have been done to further

the hospital's interests." *HPI Health,* 131 Ill.2d at 158-59.

Because RehabCare has alleged that Gem's conduct was intentional, without justification, and did not further the Facility Defendants' interests, RehabCare has sufficiently alleged that Gem's conduct was unjustified. *See id.; see also Williams,* 18 F.3d at 403. Therefore, the Court denies Defendants' motion as to Count V of the First Amended Complaint.

## V. Fraudulent Conveyance Claim – Count VI

In Count VI of the First Amended Complaint, RehabCare alleges a fraudulent conveyance claim under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1, *et seq.*, ("IUFTA") against Gem and Lerner. More specifically, RehabCare maintains that the Facility Defendants fraudulently transferred assets to Gem and Lerner. In their to dismiss motion, Defendants argue that RehabCare has failed to allege its fraudulent conveyance claim with particularity as required under Rule 9(b).

The IUFTA "protects against two kinds of fraudulent transfers: transfers with an actual intent to defraud and transfers which the law considers fraudulent (i.e., constructive fraud or fraud in law)." *General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1078 (7th Cir. 1997). RehabCare is alleging the first type of fraud, namely, that Defendants had actual intent to defraud and the *GE Capital* decision lends guidance as to the pleading requirements for this claim. *See id.* at 1078-79. Specifically, a plaintiff must allege: (1) jurisdiction; (2) a statement of the date and conditions under which the defendants became indebted to the plaintiff; (3) a statement that the defendants owe the plaintiff the amount; (4) a description of the events surrounding the defendants' conveyance of property or assets to the transfer recipient for the purpose of defrauding the plaintiff; and (5) the plaintiff's demand to the court. *See id.*; *see also*

*Full Perspective Video Serv., Inc. v. Garcia,* 04 C 3038, 2005 WL 1667807, at *5 (N.D. Ill. 2005).

RehabCare has alleged these elements with sufficient particularity under Rule 9(b) in its First Amended Complaint.  In particular, the Court has jurisdiction over this matter based on diversity jurisdiction, the Facility Defendants allegedly transferred assets to Gem and Lerner during the time RehabCare was providing services from December 2008 to May 2010, RehabCare alleges that Gem and Lerner had actual intent to defraud its creditors – including RehabCare – and RehabCare seeks relief based on this alleged fraud.  (First Am. Compl. ¶¶ 61, 62.)  In addition, RehabCare specifically defines the fraudulently transferred assets as alleged "management fees," "consulting fees," "rent," "reimbursement of expenses," "distributions," "dividends," and "repayment of loan."  (*Id*. ¶ 63.)  In the context of RehabCare's detailed allegations throughout its First Amended Complaint, RehabCare has sufficiently alleged the who, what, where, when, and how of Gem and Lerner's allegedly fraudulent conduct.  *See Pirelli Armstrong Tire Corp.,* 631 F.3d at 446.

On a final note, Defendants' argument that the IUFTA only applies in the context of bankruptcy proceedings is unavailing.  *See B.E.L.T., Inc. v. Wachovia Corp.,* 403 F.3d 474, 477 (7th Cir. 2005) ("fraudulent conveyance may be recovered independent of a bankruptcy proceeding") (citing 740 ILCS 160/8).  The Court therefore denies Defendants' motion to dismiss Count VI of the First Amended Complaint.

## CONCLUSION

For the these reasons, the Court denies Defendants' motion to dismiss brought pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), (6).

**Date:** April 13, 2012

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**